# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff,**

-vs-                              **Case No. 6:10-cr-48-Orl-31KRS**
                                     **Case No.  6:10-cr-188-Orl-31KRS**

JORGE ALBERTO ACOSTA,

        **Defendant.**

_____

## MEMORANDUM SENTENCING OPINION

The Defendant, Jorge Acosta ("Acosta"), bought a number of weapons from Hugh Crumpler ("Crumpler"), and tried to buy others.  Among the weapons Acosta bought were five short-barreled rifles that should have been registered in the National Firearm Registration and Transfer Record ("NFRTR"), but were not.  Acosta also possessed two Ruger machineguns that should have been registered in the NFRTR, but were not.  (For the sake of brevity, the remainder of this opinion will refer to any firearms that should have been registered in the NFRTR but were not simply as "illegal firearms").  Acosta also bought more than 100 firearms from Crumpler, such as Glock handguns, which had no registration requirement.

Crumpler became a Government informant in January 2010.  Acosta was arrested on February 5, 2010.  For reasons not pertinent to sentencing, Acosta was charged in Case No. 6:10-cr-48 (the "'48 case") with one count of conspiring to possess illegal firearms in violation of 26 U.S.C. § 5861(d) and in Case No. 6:10-cr-188 (the "'188 case") with one count of violating that

same statute by possessing illegal firearms – specifically, the two Ruger machineguns.[1]  He

eventually pled guilty to both counts.  The case is now before me for sentencing, and a dispute has

arisen as to Acosta's total offense level for sentencing purposes.

**Calculation of the Guidelines Score**

The first step in imposing a sentence is the calculation of the advisory Guidelines range.

*See, e.g., United States v. Williams*, 435 F.3d 1350, 1353 (11th Cir. 2006).  Calculation of the

Guidelines score in this case begins with § 2K2.1 of the United States Sentencing Guidelines.

Both the Government and Acosta agree that Acosta's base level here is 18, because the offense

involved a firearm described in 26 U.S.C. § 5845(a).[2]  *See* § 2K2.1(a)(5).  However, the parties

disagree as to the number of levels that ought to be added to this base for the number of weapons

that were involved.

The Government argues that, pursuant to § 2K2.1(b)(1)(D), Acosta should receive an eight-

level increase because the offense involved between 100 and 199 firearms.  The Government's

primary argument is that Acosta bought between 100 and 199 firearms from Crumpler during the

time he was conspiring to possess and possessing the illegal weapons.  Acosta argues that his

offense involved only seven firearms – the five short-barreled rifles and the two Ruger

machineguns – as those were the only *illegal* firearms that he has been shown to have possessed.

---

[1]Acosta held and inspected the Rugers, and intended to buy them from Crumpler, but was
arrested before he could do so.

[2]The list of firearms described in 26 U.S.C. § 5845(a) includes short-barreled rifles of the type
Acosta admitted buying from Crumpler.

An offense involving seven firearms qualifies for a two-level increase rather than an eight-level increase. *See* § 2K2.1(b)(1)(A).

The Government seeks to support its 100-plus figure in a number of different ways. First, it argues that the "Specific Offense Characteristics" section at issue, § 2K2.1(b)(1), has no restriction on the types of firearms to which it applies – as opposed to, for example, § 2K2.1(a)(5), which established Acosta's base offense level and which applies only to firearms listed in 26 U.S.C. § 5845(a). By this reasoning, *any* firearm possessed by Acosta would be included in calculating the enhancement. This argument fails, however. Though its application may not be limited to certain varieties of weapons, § 2k2.1(b)(1) *is* limited to firearms that were involved in the offense.[3] Thus,§ 2K2.1(b)(1) would only apply to the illegal weapons possessed by Acosta during this time frame.

The Government next points to Comment 5 to § 2K2.1, which provides that "[f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed". The Government argues that it can show (1) that Acosta possessed more than 100 weapons during the course of his involvement with Crumpler, and (2) that all of those weapons were "unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." (Doc. 89 at 2 in the '48 Case). The Government offers to show this in several ways – by producing evidence that Acosta was engaged in unlicensed firearms dealing and illegally exporting weapons to Honduras, that he

---

[3]Section 2K2.1(b)(1) provides in pertinent part that "If the offense involved three or more firearms, increase as follows," followed by a list of numbers of firearms and corresponding level enhancements.

was aware that he was engaging in illegal activity, and that he knew Crumpler was also illegally selling guns to another group that was illegally exporting them to Honduras.

The Government reads the language of Comment 5 as expanding the scope of weapons that can be counted for purposes of § 2K2.1(b)(1) to include any weapons that have been unlawfully sought, possessed, or distributed.  But Comment 5, by its plain terms, *restricts* the scope of the weapons to be counted for scoring purposes.  The fundamental requirement of § 2K2.1(b)(1) is that the weapons be "involved" in the "offense."  If they were involved, they can only be counted if they were also unlawfully sought, possessed, or distributed.  The latter requirement does not come into play until the former requirement is met.  And the Government has not shown that these 100 to 199 weapons were involved in Acosta's offense.

The Guidelines define the "offense" to mean "the offense of conviction and all relevant conduct under § 1B1.3."  Guidelines § 1B1.1, Note 1(H).  Section 1B1.3 includes as relevant conduct all acts committed by the defendant "that occurred during the commission of the offense of conviction, in preparation for it, or in the course of trying to avoid detection for that offense." Even assuming that Acosta illegally exported or trafficked the Glocks and other legal firearms he bought, this exportation and/or trafficking was not part of (1) his preparation to possess short-barreled rifles and machineguns; (2) his actual possession of short-barreled rifles and machineguns; or (3) his efforts to avoid detection of his possession of short-barreled rifles and machineguns.  As such, even if the Glocks and other legal firearms were illegally distributed, the exportation and/or trafficking was not relevant conduct under § 1B1.3.

The Government argues that *United States v. Holder*, 199 Fed. Appx. 915 (11th Cir. 2006), requires the Court to count these 100-plus legal weapons in sentencing Acosta for possessing

-4-

illegal weapons. In *Holder*, the defendant was charged with possession of a machinegun in violation of 18 U.S.C. § 922(o) and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). *Id.* at 916-17. In his plea agreement, Holder stipulated among other things (1) that he was a drug abuser in possession of 133 firearms and that (2) this information could be used against him at sentencing. *Id.* at 917. It is not clear from the opinion, but it appears that some if not most of these 133 firearms were neither machineguns nor weapons with a registration requirement. The trial court declined to impose the eight-level enhancement pursuant to § 2K2.1, stating that there was no evidence that Holder had been a drug abuser (and therefore a prohibited person) at the time he obtained the firearms. *Id.* The appellate court found that the district court had erred by failing to impose the eight-level enhancement, because Holder had stipulated that he was a drug abuser, and therefore a prohibited person, while in possession of the weapons. *Id.* at 918-19. Thus, regardless of whether the firearms were unlawfully sought to be obtained, they were unlawfully possessed. *Id.*

*Holder* does not address the primary question here: whether the other weapons were "involved in the offense". The Defendant did not argue at trial or on appeal that these other weapons were not involved in his violations of 18 U.S.C. § 922(o) or 26 U.S.C. § 5761(d). So far as the *Holder* opinion shows, all of the parties involved simply assumed that they were so involved – perhaps because of the stipulation in the plea agreement – and the only issue was whether they were *also* illegally sought, possessed, or distributed.

More on point in regard to this matter is the case of *United States v. Ahmad*, 202 F.3d 588 (2d Cir. 2000). Ahmad was convicted of possessing six illegal firearms, including unregistered silencers (which the pertinent law refers to as "firearms") and an unregistered sawed-off shotgun.

*Id.* at 590.  When the police searched his house and found the illegal firearms, they also found seven firearms that were legal for Ahmad to possess under federal law.  *Id.*  However, Ahmad's possession of those other seven firearms violated state and local law, because he did not have the licenses required by those jurisdictions.  *Id*. at 591.  Because of this, the trial court found that Ahmad's crime of illegal possession involved 13 firearms, resulting in a four-level enhancement pursuant to § 2K2.1(b)(1).  *Id.*  The appellate court reversed, concluding that Ahmad should have received only a two-level enhancement, because his crime involved only six firearms.  Ahmad's possession of the other seven firearms, though illegal under state and local law, was not a "harm" under federal law.  *Id.*  As such, the possession of the other seven firearms was not "relevant conduct" under § 1B1.3, and therefore those firearms were not involved in the offense under § 2K2.1.  Compare this to the situation in the instant case, where there has been no showing that *any* law barred Acosta's acquisition, possession, or distribution of the Glocks and other legal firearms.

Taking another tack, the Government also argues that the Glocks and other legal firearms should be counted for sentencing purposes because of the conspiracy charge to which Acosta pled guilty.  In the case of jointly undertaken criminal activity, § 1B1.3 also includes as relevant conduct all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.  However, the Government stated in its sentencing memorandum that, in seeking the eight-level enhancement, it was attempting to hold Acosta responsible for "the amount of firearms [he] personally possessed and illegally trafficked."  (Doc. 76 at 9 in the '48 case).  Under this rationale, firearms possessed or trafficked by others should not be counted for purposes of Acosta's sentencing.

Subsequently, the Government argued that Acosta knew that Crumpler, his co-conspirator (until he turned informant), was engaging in other illegal conduct during the pertinent time frame. (Doc. 89 at 2-3 in the '48 case).  In particular, the Government argued that Acosta was aware that Crumpler was also selling guns to a group that was engaging in trafficking to Honduras, and that after members of that other group were arrested, he and Crumpler discussed how to avoid police detection.  (Doc. 89 at 2-3).  However, there has been no showing that Acosta was engaged in any joint activity with this other group, so as to be held responsible for weapons that its members possessed.  All the Government has shown was that Acosta was aware when members of that group were arrested.  This is not enough to support a claim that they were engaged in any joint activity – particularly in light of the evidence that, shortly before his own arrest, Acosta was trying to convince Crumpler to stop selling to the other group.[4]

Taking all of the foregoing into consideration, the Court finds that seven weapons were involved in Acosta's offense, and therefore Acosta's base level should be increased by two levels pursuant to § 2K2.1(b)(1)(A).  Starting with a base level of 18 and adding two levels for the

---

[4]In support of this line of argument, the Government cites to the case of *United States v. Damon*, 595 F.3d 395, 397 (1st Cir. 2010), in which the Defendant received a two-level enhancement under § 2K2.1(a)(1) for weapons possessed by two other individuals.  However, in that case, Damon was convicted of firearm possession by a felon.  *Id.* at 397.  He and two other felons had traveled together to an out-of-state pawn shop, where they browsed through the weapons available in the pawn shop, before paying a proxy to buy each of them a firearm.  *Id.*  Thus, Damon and the others jointly engaged in activity that had, as its object, the possession of three firearms (by three felons). Possession of three firearms by felons was obviously something that was in furtherance of the jointly undertaken activity, and therefore it qualified as relevant conduct in sentencing Damon for possession of firearms by a felon  There is no parallel to that joint activity in this case, at least in regard to the Glocks and other legal firearms.

number of illegal guns possessed, and four levels for trafficking,[5] the offense level becomes 24.

After subtracting three levels for acceptance of responsibility, the adjusted offense level becomes

21.  Acosta has a relatively minimal criminal history, which puts him in category I.  The

combination of offense level 21 and criminal history I produces a Guidelines range of 37 to 46

months imprisonment.  For the reasons stated in open court during the sentencing hearing that

concluded on December 2nd, the Court imposed a sentence of 30 months, a slight variance below

the low end of the Guidelines range.

       **DONE** and **ORDERED** in Chambers, Orlando, Florida on December 3, 2010.

                                   **GREGORY A. PRESNELL**
                                 **UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5]The Government had argued in favor of a four-level enhancement under either § 2K2.1(b)(5) or (6).  The Court determined that this enhancement was appropriate under § 2K2.1(b)(5).